RUTLAND,
February,
1831.

## JOSEPH ALLEN vs. JACOB EDGERTON.

When a contract, requiring labor in a factory, has been running and the labor performed, several weeks, one cannot rescind, so as to divest the property he had conveyed to the other, by such contract.

Especially when he cannot place the other party in the same state as at the beginning.

A joint possession of vendor and vendee of personal property must amount to a joint control of it, or it does not amount to a fraud in law, as to creditors.

This was an action of *trover* for certain goods, wares and merchandise. The defendant justified the taking under, and by virtue of, a writ of execution in favor of one Benjamin Knower against one Ira Seely, who had formerly owned the goods, and of whom the plaintiff claimed to have purchased them. The plaintiff recovered a verdict in the county court, and exceptions were taken to some decisions and the charge to the jury ; and the cause was brought to this Court for a hearing on said exceptions. The facts stated in the exceptions, as attempted to be proved, so far as important to the points urged in argument before this Court, were as follow : The plaintiff was surety for Seely, to the Farmers' and Mechanics' Bank in Albany, upon a note of about $1500; and afterwards became holden to James M'Daniels for his paying and discharging the debt. Seely being then the owner of certain goods, wares and merchandise in a retail store, and of cloth, yarn, &c., in an unfinished state, in a factory, and a quantity of wool, agreed with the plaintiff to let him have the possession of said goods, and Seely was to assist or have a voice in the manufacture and sale of them. Neither Seely nor the plaintiff were manufacturers. The plaintiff was to apply the avails in satisfaction of the debts for which he was holden for Seely, in the first place. The plaintiff, pursuant to said contract with Seely, came into possession of said property, and conducted the manufacturing for several weeks. The goods were under an attachment against Seely, but it did not appear for what amount nor in whose favor the attachment was. Knower made some proposition to the plaintiff about manufacturing the wool and redeeming it from the attachment. The particulars of this proposition did not appear in the case. In the evening before the attachment or levy made by the defendant, the plaintiff informed Seely that he should not consent to the proposition of Knower, but would dispose of all the goods at once, and have nothing further to do with them. Seely repeatedly urged the plaintiff to go on with the contract in good faith. The plaintiff told Seely if he agreed to manufacture the wool he would not do it. Seely then told the plaintiff he should not be bound by the

RUTLAND,
February,
1831.

Allen
vs.
Edgerton.

contract on his part; and immediately after, the defendant took the goods, which is the wrong complained of by the plaintiff. The defendant also adduced testimony to show, that, in point of fact, although the plaintiff came into possession of said factory and store, Seely was advising as to their manufactures; and further to show, that there was a joint possession of the plaintiff and Seely in the said property, prior to the taking by the defendant. And the defendant contended, that this joint possession, of the vendor and purchaser, rendered the sale void as against creditors. The court, among other things, instructed the jury, that, if the plaintiff had purchased the goods of Seely and was in possession of them, his after refusal to perform as above mentioned, would not divest him of the possession, nor render the goods liable to be taken by the creditors of Seely; and that a joint possession of the plaintiff and Seely must be considered a fraud in law, and would render void the sale as to creditors : but, if the sale was *bona fide*, (explaining what constituted a *bona fide* sale,) to render it void as against creditors, it must appear that the possession and use of the vendor was of the same description as that of a joint owner in using, occupying and disposing of the property. The defendant excepted to the charge, as also to the decision of the court in rejecting evi·dence by him offered, tending to prove, that M'Daniels, when he paid said debt to the bank, had Seely's property in his hands to a larger amount than he then paid.

After argument,

HUTCHINSON, C. J., (after stating the case,) *pronounced the opinion of the Court.*—I am inclined first to dispose of the exception to the decision of the court, rejecting the testimony, offered by the defendant, to show, that M'Daniels had the property of Seely in his possession, when he paid the debt to the bank. We consider, that this testimony was correctly rejected; for nothing in the case shows, that the plaintiff had any means or power, to compel an appropriation of that property to relieve his liability; nor that M'Daniels ever undertook to pay, or paid, the bank debt in consideration of his having that property in his possession. He seems accountable to no person for that property but to Seely. At any rate, the defendant, or Knower, the creditor, for whom he has acted, had as much control over that property, as the plaintiff had.

The instructions to the jury, about joint possession of vendor and vendee, were, that it must be considered a fraud in law which would avoid the sale as to creditors. Thus far it is all the defen-

Rutland,
*February*,
1831.

Allen
*vs.*
Edgerton.

dant contends for. But his objections are urged to the after explanation, that (supposing the sale *bona fide,*) in order to render it thus void, the possession and use of the vendor must be of the same description, as that of a joint owner, in using, occupying and disposing of the property. Now, it is not easy to perceive, that any thing short of this would furnish any evidence, that he yet remained the owner. That is the reason why possession must be changed, to announce a change of ownership, and prevent the former owner from gaining a credit by his continued possession. His laboring about the factory or shop as an underworkman would not have the effect to give him a credit. In such case, an important inquiry is, who is at the head, controling the business ? If a candid observer would find it difficult to determine which of the two had the chief control, that, according to the charge, and according to our former decisions, would be deemed a joint possession. This part of the charge refers to the manner of carrying on the business, from which the world might infer, that one or the other, or both, remained owners, and entitled to credit as such. In this natural view of the instructions upon this point, they are correct, and correspond with our decisions in the cases of Durkee and Mahoney, and Mott and M'Niel.

There remains an exception to that part of the charge, which relates to the plaintiff's refusal to go on with the contract, just before the defendant attached. It appears, that the goods, &c., were under a prior attachment from which Knower proposed to redeem them, on terms proposed by him ; to which the plaintiff would not consent. It does not appear, that the plaintiff knew of this attachment, till that time. Nothing was said about it in the agreement between Seely and the plaintiff, under which the plaintiff took possession. Possibly the knowledge of this attachment had some effect to discourage plaintiff about proceeding to manufacture, &c. under his contract. But, whether it had or not, had Seely a right to be off of the contract on his part, and divest the plaintiff of his right to, or lien upon, the property, and leave plaintiff with no security for his liability to M'Daniels ? We think he had no such right. The plaintiff had carried on the business several weeks under his contract. Seely had no right to put an end to the contract without putting plaintiff in the state he was in at the beginning. This could not be done without discharging plaintiff's liability to M'Daniels, and accounting for plaintiff's labor, &c., while he carried on this business. This as much required the concurrence of both, as did the making of the original

contract. If Seely should sue the plaintiff for a breach of his contract, in that action it might be litigated and decided, whether the plaintiff had good reasons for not proceeding further ; and, if not, what damages would make Seely good. But we recollect no case in which one party alone can so rescind a contract, as to divest the property conveyed, except where that party, who would rescind, has discovered a fraud on the part of the other in making the contract, and can himself restore what he received from the other in as good a plight, as it was in when he received it. This, surely, is not such a case. The instructions given to the jury upon this point, also, are correct.

The defendant's counsel suggest some supposed inaccuracy of the case. The action has been laid over once or twice, to give him an opportunity to apply to the presiding judge, to advert to his minutes, and amend the case, if any thing is incorrect. No amendment is produced ; and we must follow the rule, we have often recognised, that the party excepting must procure sufficient to be placed upon the record in the case, to show an incorrect decision of the court that tried the cause. That the defendant has not done in this case ; and the judgement of the county court is affirmed.

> *Royce & Hodges*, for plaintiff.
> *Clark & Bates*, for defendant.