CALEDONIA,
*March,*
1842.

Town of
Lyndon
*v.*
Belden *et al.*

---

TOWN OF LYNDON *v.* HAYNES W BELDEN and FRANKLIN W. WRIGHT.

Where the overseers of the poor of a town, by contract with a poor person, received from him a horse, towards indemnifying the town in yielding him a support, *it was held* the property of the horse vested in the town and they might sue for him.

And that the pauper, being in a distressed condition and in need of relief, had a right so to dispose of the horse, being of little value, and his creditors could not impeach the transaction, as without consideration.

It was also held that there having been a general and substantial change in the possession of the property, the sale was not rendered fraudulent *per se*, though the overseers had permitted the pauper to ride the horse a short distance in two or three instances, and though, on one of these occasions, the property was attached.

TRESPASS for a colt. Plea, not guilty and trial by jury.

CALEDONIA.
March,
1842.

Town of
Lyndon.
v.
Belden et al.

On the trial in the county court, the plaintiffs introduced testimony tending to prove that the overseers of the poor of the town of Lyndon, in the fall or winter of the year 1839–40, were notified by the overseers of the poor of the town of Burke that one Josiah Jones had become chargeable to that town, and that his legal settlement was in the town of Lyndon; that the overseers of Lyndon examined into the case, and assumed the burden of supporting the pauper; that he remained at Burke until April, 1840, when the overseers of Lyndon removed him and his effects to the poor-house in Lyndon; that the mare, which foaled the colt in question, was, at the time when the overseers of Lyndon assumed the maintenance of said Jones, his property, but not considered of much value; that this mare, with other property, the whole worth only a few dollars, then belonged to him; that, at the time when the plaintiffs assumed the maintenance of said Jones, he was in a very feeble state of health, so as to be incapable of conversing much, but of sound mind; that he then told the overseers of the poor of Lyndon that he considered what property he had as belonging to them; that he made the same remark to them at the time he was removed to Lyndon, and, at that time, the overseers of Lyndon took this mare and put her in possession of some one, whom they paid for her keeping until grass grew, and then put her on the poor-house farm; that she remained there until the time of the attachment by the defendant, under the exclusive control of the overseer of the farm, except that on two or three occasions, while Jones remained there, he suffered him to ride her a short distance; that, on one of these occasions, he rode to Burke with the mare, the colt in question, which had been foaled on the poor house farm during the season, following her, which was on the 5th day of October, 1840, when the defendant, by proper authority, attached the colt as the property of said Jones, on a debt due from him before he became chargeable to the town of Lyndon; which was the trespass complained of.

The court intimated to the counsel for the parties, that they should charge the jury, that if they were satisfied that Jones understandingly desired the overseers of Lyndon to take this mare and dispose of her as their own property, and let the proceeds go towards reimbursing them for his sup-

port, and they had expended her value in that manner, and if they also believed all the testimony on the part of the plaintiff, they would be entitled to recover the value of the colt. Whereupon the defendant submitted to a verdict for the plaintiff, with leave to except to the foregoing charge, and the defendant thereupon excepted.

CALEDONIA,
March,
1842.

Town of
Lyndon
v.
Belden et al.

*E. Paddock and G. C. Cahoon,* for defendants.

It does not appear from the exceptions that there was any sale or transfer of the ownership of the mare from Jones to the town of Lyndon, or that Jones was at any time prior to the attachment so divested of her that he might not have reclaimed or sold her to another.

I find no law authorizing a town to take possession of the property of a pauper and appropriate it to the use of the town. A town may doubtless dispose of such property by the consent of the pauper, but here was no such disposition. A town may authorize the purchase of property, but here was neither authority to purchase, nor actual purchase of the mare. It is true that Jones said he considered all his property as belonging to the town, but did that declaration amount to a bargain and sale? As between individuals it certainly would not, and a town can claim nothing more than an individual.

Will it be said that Jones made an appropriation or gift of the mare to the town? We answer that he could not do it as against creditors. It is said that the conductor of the poor house farm paid for keeping the mare before she was taken to the farm. That would not constitute a change of property, nor does it appear that the town of Lyndon have been at any expense for the beast beyond the worth of her services.

Should the court consider that there was a change of property and that Lyndon was invested with the ownership of the mare, yet we insist that the attachment will hold for the reason that the plaintiffs suffered and permitted the mare to go back into the possession of Jones, for it appears that when he had ocassion to ride, he used the mare as he ever had done and that with the knowledge and consent of the overseer, which brings this case fully within the doctrine and principles held by the court in *Mott* v. *McNeil,* 1 Aik. 165 ; *Judd &amp; Harris* v. *Langdon,* 5 Vt. R. 235 ; *Morris et al.* v. *Hyde,*

CALEDONIA,
March,
1842.

Town of
Lyndon
v.
Belden et al.

6 Vt. R. 352; *Durkee* v. *Mahoney*, 1 Aik. R. 116; *Weeks* v. *Weed*, 2 Aik. R. 64; *Batchelder* v. *Carter*, 2 Vt. R. 168; *Beattie* v. *Robin*, 2 Vt. R. 181.

*T. Bartlett*, for plaintiffs.

From the facts stated in the exceptions, the plaintiffs contend:

1. That it was as competent for Jones to dispose of his property to the overseers of the town of Lyndon, for his support, as to any other person or persons.

2. That the overseers of the poor of Lyndon paid a valuable and full consideration for the mare, and that there was a sufficient change of possession. The town of Lyndon had the possession and exclusive control of the mare for nearly a year, except that on two or three occasions, while Jones was at the poor-house, he rode her a short distance, which, after the lapse of time, and the notoriety of Jones' situation, cannot render the transaction fraudulent and void.

The opinion of the court was delivered by

BENNETT, J.—From the intimation of the county court as to what their instructions would be to the jury, and the defendants having thereupon submitted to a verdict, this case is to be considered as if the the jury had found all the facts and positions established, alluded to in the instructions which the court intimated they should give. That there was evidence tending to prove the positions taken by the court, no one can doubt. Of the sufficiency and credibility of that testimony, if questioned, the jury should have been made the judges. It has been said this action cannot be maintained in the name of the town. But it is the appropriate duty of the overseers of the poor to provide for their support, and save the town harmless as far as practicable. The consideration paid for the mare moved from the town and the purchase of her would inure to their benefit and the legal title vest in them. The overseers of the poor were, *quoad hoc*, but agents of the town.

Jones being in a distressed condition and in need of relief was justified in turning out this pittance of property to be expended in his support. The town paid a valuable consideration for it, and the creditors of Jones cannot impeach

the transaction as being without consideration. Though Jones had his legal settlement in Lyndon, yet, he had no legal claim against the town for his support, and it was just as competent for the town to take a lien upon this property, as a means of indemnity, as for any individual who might have yielded him a support.

It is claimed that there was no sufficient change in the possession to protect the plaintiffs' claim to the mare against the creditors of Jones. The case finds that the overseers, at the time, (that is, in April, 1840,) took the mare and put her out to keep and paid for her keeping till grass time, and then put her on the poor-house farm, where she remained, as the case says, under the exclusive control of the overseer of the farm till the attachment of the colt, except on two or three occasions when Jones had her to ride a short distance, and that on one of these occasions he rode her to Burke, in October of the same year, and her colt, which had been that season foaled on the poor-house farm, followed her, when it was attached as the property of Jones.

In this particular, the facts are much like those in *Farnsworth* v. *Shepard*, 6 Vt. R. 522. In that case the court held that such temporary lendings or hirings could not change or affect the character of the possession. It would, indeed, be strict to hold that a vendee could not perform the ordinary courtesies of civilized life towards the vendor, without endangering his property by subjecting it to attachment and execution for the vendor's debts. The general and exclusive possession of the mare had been in the town, with the few temporary exceptions mentioned, for about six months before the attachment. We have no doubt upon this point. Besides, it might well be inquired, as this foal was not *in esse* when the mare was transferred, whether that would be subject to those rules which have been established and adhered to in this state, in regard to a change of possession.

The judgment of the county court is affirmed.