Hall *v.* Parsons.

CALEB HALL *v.* IRA PARSONS.

[Same Case, 15 Vt. 358.]

A concurrent possession of personal property by the vendor and vendee, after the sale of the property, renders the sale fraudulent *per se*, as to the creditors of the vendor; but the joint possession, to have that effect, must appear to be of the same description, in the use, occupancy and disposition of the property, as that of joint owners.

What constitutes a concurrent possession is a question of law, to be determined by the court; but the jury must decide what facts, tending to show such possession, are established by the evidence.

And the same change of possession, which is required in case of the sale of personal property, is required where personal property is assigned for the benefit of the assignee, as creditor of the assignor, and, after payment of his claims, for the benefit of the creditors generally of the assignor.

But where the property assigned, in such case, consisted of a store of goods, and the assignee was the owner of the store, and of the land on which it stood, and, immediately upon the execution of the assignment, took down the sign of the assignor, and hired anew the clerk who had been before employed by the assignor, and took the *control* of the store, and opened a new set of books, and was present personally in the store most of the time after the assignment, attending to the business of the store, and until the time the goods were attached as the property of the assignor, it was held that a joint possession by the assignee and assignor, sufficient to render the sale fraudulent in law as against the creditors of the assignor, was not established by proof that the assignor, after the assignment, continued in the store, and assisted in making an inventory of the goods, and that he, and the clerk previously employed by him, continued, while making the inven-

Hall *v.* Parsons.

tory, to sell goods to the customers, and that, when the inventory was completed, the assignor took the books to his own house and posted them, and made settlements with those who had accounts thereon, and, when balances were found against him, gave memoranda of the amount, to be carried to the store, where the amount was paid in goods, and that, after about a week, the books were returned to the store, and, from that time, the assignor was in the store, settling with his customers, taking notes and pay for balances due, and, when the balances were against him, paying therefor in goods out of the store, and also, by the consent of the assignee, paying in goods from the store his outstanding due bills which were made payable in goods, and that he sold goods, and waited upon customers, and took goods for the use of his family, which were charged to him upon the books of the assignee, and had, in many instances, the sole charge and care of the store, selling goods and taking pay, in the absence of the assignee and of the clerk.

TRESPASS, brought to recover the value of certain property, attached by the defendant, as sheriff, as the property of one Caleb B. Hall. Plea, the general issue, with notice, and trial by jury.

On trial the plaintiff gave in evidence an assignment to himself, dated January 27, 1840, from Caleb B. Hall, of all the goods, &c., then in the store occupied by said Caleb B. Hall, agreeably to an inventory to be made out, and of which the goods attached were a portion, and also of certain other property, both real and personal, for the purpose, as specified in said assignment, first, of paying all the debts of said Caleb B. Hall for which the plaintiff was holden as surety, next, of paying the amount the plaintiff had paid for the said Caleb B. Hall, and then to pay, equally, the other debts of the said Caleb B. Hall.

The plaintiff then introduced evidence tending to prove that said goods were in a store belonging to the plaintiff, which the said Caleb B. had been occupying for some years, as a store, by license of the plaintiff, and that John M. Hall was his clerk ; that on the day of the assignment the plaintiff told Caleb B. Hall to inform John M. Hall that he wished him to stay as his clerk until spring, and that then, if the plaintiff purchased new goods, he should want him to continue ; that Caleb B. communicated this to John M.; that the next morning the plaintiff went to the store and took down the sign, and gave directions, and took the control of the store, and the invoice

Hall *v.* Parsons.

of the goods, which had been previously begun, was finished by Caleb B. Hall and John M. Hall; that from that time, which was the 27th of January 1840, to the time of the attachment, which was the 17th of February, 1840, the plaintiff continued to give directions, and to control the business of the store; that, at the time of the attachment, the plaintiff's claims against the said Caleb B., in debts and liabilities for him, amounted to four thousand and one hundred dollars, and that the real estate, conveyed and included in the assignment, amounted to one thousand dollars, and the notes and accounts assigned amounted to two thousand two hundred dollars, and the goods and personal property to about three thousand one hundred dollars.

The plaintiff's testimony tended farther to shew, that the said Caleb B. Hall, at the request of the plaintiff, boarded the clerk, and that he took the books to his own house, and posted them up, and then returned them to the store; and that also, at the request of the plaintiff, the said Caleb B. had at times assisted in handing down and selling goods, and waiting upon customers, and had settled with his customers and taken notes to the plaintiff; that he sometimes took pay and handed over whatever was paid to the plaintiff; and that the plaintiff exhibited said assignment and schedule to the defendant, before the goods were removed.

After having given in evidence the writs of attachment, &c., on which said property was taken and sold as the property of Caleb B. Hall, the defendant read in evidence the deposition of Charles Hunter, who had been, by the defendant, discharged from all liability, and who testified, in substance, that he was formerly a member of the firm of Hunter, Kellogg & Co., and went to Clarendon in February, 1840, to secure a debt which Caleb B. Hall owed to that firm; that on the 16th of February, 1840, he called at the store of Caleb B. Hall, in Clarendon, and found him behind the counter, waiting upon his customers, and handing down and dealing out goods, and, to all appearances, having the sole care and charge of the store; that he applied to said Caleb B. for security, and was informed by him that he had, some time previous, made an assignment of his goods to his father, and that said Caleb B. declined making any satisfactory security; that he conversed with said Caleb

35

B. several hours, during all which time said Caleb B. continued to have the charge of the store and to wait upon his customers, that he returned to the store again the next day, with a writ of attachment, and accompanied by the defendant, the sheriff; that Caleb B. was then absent, but returned, after some hours, and, still declining to give security for the debt, and the clerk, who was then in the store, leaving it, so that no one remained in it but Caleb B. Hall, the witness Hunter and the sheriff, Hunter gave the writ to the sheriff, and directed him to attach the goods upon it,—which was done; and it appeared that it was for this taking that the present action was brought.

The defendant also introduced testimony tending to prove, that, after said assignment and before said attachment, Caleb B. Hall continued in the store and assisted to make an inventory of the goods, and that, while making said inventory, the said Caleb B. and the clerk continued to sell goods to the customers, and that, after the inventory was completed, the said Caleb B. took the books to his own house and posted them, and made settlements with his customers, and, when a balance was found due from him, gave them a memorandum of the amount to carry to the store, where the amount was paid in goods; that, when the books were posted, they were carried back to the store, (after about one week;) and that from that time the said Caleb B. spent his time in said store, settling with his customers, taking notes, and taking pay for balances due, and paying in goods, where balances were found against him, and that he also paid in goods his outstanding due bills payable in goods; that he sold goods, waited upon his customers, and took goods from the store for his family's use, without weight or measure, made charges upon the books, and, in many cases, had the sole possession, charge and care of the store, selling goods, and taking pay, in the absence both of the plaintiff and the clerk.

After the evidence was closed, and before the cause was submitted to the jury, the counsel for the defendant requested the court, in writing, to charge the jury, as follows;—1st. That, to entitle the plaintiff to recover, he must have taken and kept *exclusive* possession of said property. 2d. That, if the jury find that said Caleb B. Hall was permitted to exercise, separately, or jointly with said Caleb

Hall *v.* Parsons.

Hall, possession of said goods, the goods were subject to attachment as the property of the said Caleb B. Hall. 3d. That, if the possession of said Caleb B. was by the permission, or request, of the plaintiff, it did not alter its character or effect as to the creditors of said Caleb B. 4th. That the exhibiting said assignment to Hunter and the fact that he was notified thereof before attachment, can have no effect. 5th. That if the jury find that said Caleb B., after the assignment and before the attachment, did post the books, settle with the customers, receive the pay, pay their balances, deal out goods, charge them on the plaintiff's books, wait on customers, pay out goods on his debts, and take goods for his family, it did constitute a possession, either in his own right, or jointly with the plaintiff; and that the plaintiff cannot recover, even though all these things were done at his request and procurement.

In answer to the first and second request, the court charged substantially as requested. As to the third request, the court charged the jury, that they should inquire whether John M. Hall the clerk, was the servant of the plaintiff, and also who was at the head of the business; and that, if a careful observer would be at a loss to determine this, it would be deemed a joint possession; and that this was a fact for the jury to find from all the facts proved in the case. In answer to the fourth request the court charged as requested. As to the fifth request the court charged the jury, that it was for them to find in whom was the possession, and whether it was a joint or exclusive possession; that the several facts there supposed did not constitute a possession in Caleb B. Hall, either in his own right, or jointly with the plaintiff, but were evidence of such possession, to be considered by the jury; and that, in determining this point, it would be proper for them to consider the fact that the plaintiff owned the store and land, that the sign had been taken down, and a new set of books procured, and whatever other outward change there was in the circumstances, and in the person who was in attendance upon the business of the store; and that, in determining these questions in relation to fraud in law, it made no difference where the clerk boarded, or by whom he was first informed of the change.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

---

Hall *v.* Parsons.

---

——————— for defendant.

*Ormsbee* and *Linsley*, for plaintiff, cited *Hall* v. *Parsons*, 15 Vt. 358; *Allen* v. *Edgerton*, 3 Vt. 458; *Harding* v. *Janes*, 4 Vt. 462; *Wilson* v. *Hooper et al.*, 12 Vt. 656.

The opinion of the court was delivered by

BENNETT, J. This is the second time that this case has come before this court, substantially upon the same state of facts. In the same case, reported in the 15th volume of Vermont Reports, p. 358, the county court assumed, that, if the jury found the facts detailed in the charge, which they were about to give to the jury, they would constitute such a concurrent, or joint, possession in the Halls, as would render the assignment fraudulent in law, as against the creditors of Caleb B. Hall.

The majority of the supreme court thought, that, from all the facts detailed in that bill of exceptions, the plaintiff was entitled to a different charge. No doubt, that a *concurrent* possession in the vendor and vendee, after the sale of a chattel, does, under the established law in this state, render the sale, in the eye of the law, a *fraud per se*, as to the vendor's creditors; and what given state of facts will constitute a *concurrent* possession must also be a question of law; though it must always be a question for the jury to decide, what facts are established by the evidence. In the case before us no question can arise as to the plaintiff's having taken and maintained a possession of the goods, after the assignment; but the important question is, did Caleb B. Hall, at the same time, have a *concurrent* possession with him? The possession of the plaintiff was substantial, open and notorious. He owned the store, took down the sign of Caleb B. Hall, which was lettered with his name, and hired the clerk anew, and, as the case finds, gave directions to the clerk, informing him of the assignment, and took the *control* of the store, and opened a new set of books, and, as testified by John M. Hall, whose deposition is made a part of the case, the plaintiff was present personally in the store, most of the time after the assignment, attending to the business of the store, to the time of the attachment.

Hall *v.* Parsons.

In *Farnsworth* v. *Shephard*, 6 Vt. 521, the plaintiff had, in August, 1831, purchased a mare of one Barker, and had kept and used her as his own from that time until the next March, when she was attached as the property of Barker. Yet it appeared on trial, that Barker, in the fall of 1831, had rode the mare twice to Danville, and once to Greensborough, and that he had several times drove the mare in a wagon to meeting with some of the plaintiff's family, and a few other times was seen riding and driving the mare in the neighborhood, and, when the mare was attached, Barker and one Ellis were returning with her from Randolph in a sleigh. Notwithstanding these facts, it was held that the plaintiff had the general and permanent possession of the mare, and that such temporary lendings, or hirings, did not give such character to the possession of Barker, as to render the sale a fraud *per se*, for the want of a change in the possession. *Lyndon* v. *Belden et al.*, 14 Vt. 423, is to the same effect.

In *Allen* v. *Edgerton*, 3 Vt. 442, the question came directly before the court in regard to what should constitute such a *concurrent* possession, as would render the transfer *fraudulent per se*. The plaintiff had assumed a liability for one Seely, and Seely had, among other things, assigned to the plaintiff wool, cloth, yarn, &c., in an unfinished state in a factory, and *Seely was to assist and have a voice in the manufacture and sale of the articles*. The plaintiff was, from the avails, to pay, in the first place, the debts for which he was holden. The plaintiff, under the contract, came into possession of the goods, and had conducted the manufacturing of them for several weeks, when they were attached by a creditor of Seely. In the defence the defendant gave testimony tending to prove that Seely was advising in regard to the business, and that he continued to have a *joint* possession of the property with the plaintiff; and it was insisted, that, for this reason, the transfer was a *fraud per se*. But the court gave in charge to the jury, that, if the transfer was *bona fide*, to render it void as against creditors " it must appear that the possession and use of the property was of the same description, as that of a joint owner, in using, occupying and disposing of it." This charge, upon exceptions, was held to be correct, and is, in effect, the same rule that was applied in the case of *Farnsworth*

v. *Shephard.* The possession, which Barker, in that case, had of the mare, was not in fact that of a joint owner, and was not allowed to control the general possession, which had been in the plaintiff.

In the case now under consideration, the plaintiff's testimony, it is said, tended to prove that Caleb B. Hall took the books home to post at the request of the plaintiff, and then returned them, and that he had, also, at the request of the plaintiff, at times, assisted in handing down and selling goods and waiting upon customers, and had settled with his customers, and took notes to the plaintiff, and sometimes took pay, which he handed to the plaintiff. The case finds, that, on the part of the defendant, evidence was given tending to prove, that, after the assignment, Caleb B. Hall continued in the store, and assisted in making an inventory of the goods, and that, while making the inventory, Caleb B. and the clerk continued to sell goods to the customers; that, when the inventory was completed, Caleb B. Hall took the books to his house and posted them and made settlements, and, when balances were found against him, he gave to the persons with whom he settled memoranda to carry to the store, where the amount was paid in goods, and, that, after about one week, the books were returned to the store, and from that time Caleb B. was in the store, settling with his customers, taking notes and pay for balances due, and, when the balances were against him, paying them in goods out of the store, and also his outstanding due bills payable in goods; and that he also sold goods, and waited upon the customers; and the case says that he took goods from the store, without weight, or measure, for his family's use, made charges on the books, and, in many instances, had the sole charge and care of the store, selling goods and taking pay, in the absence of the plaintiff and of the clerk.

In this case the testimony does not, on either side, show that Caleb B. Hall had any beneficial use, or possession, of the property, as a joint owner, inconsistent with the assignment. It was a matter quite immaterial where the clerk continued to board, as to the actual possession of the goods. The fact that Caleb B. Hall had the books at his own house, posting them, is no act of ownership over the goods then in the store, indicating to whom they belonged;

neither was the settlement of the old accounts and giving memoranda of the balances due; and if the plaintiff chose to consent that they should be paid in goods, it would seem as if this should not have any effect upon the question of possession.   It was according to the *trust*, that the plaintiff should first be paid, and then all the other creditors of Caleb B. Hall, in equal proportions.   If the plaintiff chose to waive his *priority* of claim under the assignment, he had a right so to do.   If it turned out, that all the creditors did not get their pay, whether the plaintiff, in accounting with them, should be allowed the whole sum paid in full of an individual creditor's debt is quite another question.

The fact, that Caleb B. Hall might sometimes take notes to the plaintiff, and also receive payment from balances that might be found due to the store, (which the case finds he paid to the plaintiff,) is consistent with the idea, that he was only the plaintiff's servant.   So, if he paid any of the balances, found against him, or outstanding due bills, in goods, it was no perversion of the property to his individual use, to the injury of creditors; and the acts might well be performed by him in the character of a mere servant.   The same may be said in regard to his having sometimes sold goods and waited on customers.   The expression, in the bill of exceptions, that testimony was given tending to prove " that Caleb B. Hall took goods from the store without weight, or measure, for his family's use," is indeed quite too general.   If he was made debtor for such things as he had, it would be the same, as if any one else had purchased them.   But if, on the other hand, his family were having from the store, from day to day, such things as are ordinarily wanted in a family, without his being made accountable, it would be very important, in showing a joint beneficial possession of the goods in Caleb B. Hall.   But if, on the contrary, Caleb B. Hall should, upon any one particular occasion, carry into his house a cup of coffee, or a bowl of sugar, " without weight, or measure," it could have but little effect in giving character to a transaction like this.

We think, when the question is upon a *joint* possession, the rule was well laid down in *Edgerton* v. *Allen*,—that it must appear to be of the same description, in the use, occupancy and disposition of it, as that of a joint owner.   Any thing short of this would not

seem to furnish evidence, that the vendor still continued the owner,
so as to gain a credit by his continued possession. This rule was,
in substance, adopted by the court below, with the qualification,
that, if a careful observer would be at a loss to determine which of
the two were at the head, having the chief control of the business,
it must be deemed a joint possession. Under these instructions the
jury have negated the fact of there being a joint possession; and the
judgment of the county court is affirmed.