TUCKWOOD, Respondent, vs. HANTHORN, Appellant.

*November 8 — November 23, 1886.*

REPLEVIN. *(1) Election to proceed for return or value: Judgment.*
FRAUDULENT CONVEYANCE: EVIDENCE: INSTRUCTIONS TO JURY. *(2)*
'*Re-examination: Sources from which money was obtained. (3)*
*Conversation between party and attorney: Authorization of attor-*
*ney. (4) Statements of attorney while procuring conveyance.*
*(5) Contents of writing not produced. (6, 7) Evidence of pecun-*
*iary condition: Tax rolls: Statements to assessor: Admissions.*
*(8) Delivery and change of possession: Court and jury: Burden*
*of proof as to fraud. (9) Instruction summarizing evidence: Dis-*
*cretion. (10) Instruction correct as a whole: Partial exception.*

1. If in an action of replevin the plaintiff does not procure a delivery of the property to him, and upon the trial, being required by the court to elect whether he will proceed for a return of the property or for its value and damages, he chooses the latter course without objection on the part of the defendant, he is entitled, if he recovers, to have an absolute judgment for the value of the property.

2. Plaintiff sold to his brother his interest in a business which they had been carrying on together. Afterwards, in consideration of the purchase price (which had not been paid) and the interest thereon, the brother transferred to the plaintiff the stock of goods then on hand and the accounts of the business. In a contest with the creditors of the brother as to the *bona fides* of the latter transfer, the cross-examination of the plaintiff was of such a character as to raise a suspicion that he did not own or have the amount of money which he claimed to have put into the business prior to the sale of his interest therein to his brother. *Held,* that upon his re-examination the plaintiff might testify from what sources he obtained the money.

3. It appearing that the transfer of the goods and accounts to the plaintiff was made by his brother at the request of a third person acting as the attorney of the plaintiff, evidence of the authority of such attorney was admissible.

4. The attorney's statement to the plaintiff's brother, at the time of procuring the transfer, that he had been informed by the plaintiff of the amount due and was directed to get pay or security therefor, was relevant as giving a reason for what he did on behalf of the plaintiff.

Tuckwood vs. Hanthorn.

5. It was not error to allow the plaintiff to state the amount of an inventory claimed to have been made by him after the transfer, without producing the inventory itself; such inventory being merely a memorandum made for convenience, and not a document which the witness would have to give some lawful reason for not producing in order to testify as to its contents.

6. Tax rolls are not admissible in evidence against a party to show the amount of his property. They are evidence against him only in a proceeding to enforce the tax levied against him. Sec. 4162, R. S.

7. But the statements of a party to the assessor as to the amount of his personal property are admissible in evidence against him.

8. Upon the evidence in this case — tending to show, *inter alia,* that immediately upon the execution of a bill of sale of a stock of goods and accounts a formal delivery of the goods and the store in which they were situated was made to the vendee; that he took the key into his own possession; that some money was delivered to him by the vendor; that he afterwards continued to work during the day upon a job he had on hand and which he desired to finish; that in the evenings he was in the store, locked the store at night, and took the money received during the day into his actual possession; that immediately, on the day of sale, he published the fact of his purchase in two of the city papers, and changed the local advertisement from the name of the vendor to his own name; that the vendor remained in the store as his clerk upon a salary; that he also retained two of the vendor's former employees; and that the vendor thereafter had no control over or interest in the business except as the hired clerk of the vendee — it is *held* a question of fact for the jury whether there was an actual delivery and continued change of the possession, without which (under sec. 2310, R. S.), the burden of proof would be upon the vendee to show the absence of fraud.

9. An instruction, prepared by counsel on one side, summarizing the evidence as understood by them and saying that all the matters stated in such summary, as well as all the other facts and circumstances, are to be considered by the jury in reaching a conclusion, may, in the discretion of the court, be refused.

10. Where an instruction correctly states that certain facts would justify a certain finding by the jury, the defeated party cannot, by an exception to the last part of the instruction, obtain a reversal of the judgment on the ground that the facts stated in that part would not justify the finding.

APPEAL from the Circuit Court for *Rock* County.

The case is stated in the opinion.   The tenth instruction, therein referred to, asked on behalf of the defendant and refused, was as follows:

"In determining the question as to whether the sale and transfer in question was fraudulent as to the creditors of Charles Tuckwood, you will consider as bearing thereon the evidence as disclosed by the personal property statement of *William Tuckwood* in evidence, the probabilities under the evidence of his having $7,085 to put into said business, the probabilities under the evidence, if he had any such sum of money, as to whether in fact he did put that sum into said business, the fact that there are no entries on the books of Tuckwood Brothers, or Charles Tuckwood, showing that any of said alleged sums were put into said business, the fact that there is no written evidence of any moneys put into said business by him, the fact that both *William* and Charles are unable to give the time, place or circumstance attending any of said alleged advances, or relate any conversations that took place when any of said advances were made; the fact that *William* had never, before the day of the execution of the alleged bill of sale, asked for a return of said moneys, or requested security therefor, or made any examination into the business, or asked the brother how he was succeeding, or his ability to pay the same or any part thereof.   Also the fact that in the transfer made in September, 1885, no writings were then deemed necessary, that no witnesses were called, and no entries made on any books and no lawyer employed, but that on the sale in question a lawyer was employed, writings made, and witnesses called; and all other facts and circumstances attending the conduct and dealing between said brothers.   Also the fact that Charles remained in the store after the said alleged transfer and in charge thereof until the seizure in question; that Charles within sixty days of the alleged transfer had purchased large quantities of goods on credit, and turned

Tuckwood vs. Hanthorn.

them, or many of them, over to *William*, and that some when turned over were in the original packages as delivered,—all those matters together with all other facts and circumstances are to be considered by you in reaching a conclusion under the evidence and issues in the case."

That part of the charge referred to in the opinion as contained in folios 145, 146, and 147 of the printed case, was as follows:

" The plaintiff claims, and has given evidence tending to show, that he alone furnished the entire capital invested in the shoe business which he and his brother Charles carried on in the store in question from some time in 1884 until about the 28th day of September, 1885, when *William* sold out his interest to Charles for the sum of about $7,085, the amount which *William* claims he then had invested in the business, and upon which he claims he received no returns except a small amount of butter from the store, and that Charles continued to carry on the business in the same place from the 28th day of September, 1885, until the 9th day of March, 1886, when the plaintiff claims that he, in good faith, and with no intent to hinder, delay, or defraud the creditors of Charles, and with no knowledge that Charles had any such intent, purchased the entire stock, including the accounts, for the amount which he claims was then due him, including interest, and which he also claims amounted to about the sum of $7,557.44. [ *William* also claims that he was then engaged in finishing a job at the Janesville Machine Company's shop, but that he took possession of the key, as well as the store and goods, hired his brother at $8 a week, and the boy who had been working for Charles; that he advertised the purchase, and was in the store evenings, and received all the money from the sales after the 9th day of March. If these claims are true, and they are sustained by the evidence, and we so believe and find from the evidence, then it sufficiently accounts for

there being no further actual and continued change of possession of the goods in question.]"

To that portion of the charge within the brackets, the defendant duly excepted.

For the appellant there was a brief by *Dunwiddie & Golden*, attorneys, and *John Winans*, of counsel, and the cause was argued orally by *Mr. Dunwiddie*. They contended, *inter alia*, that it was error to permit the plaintiff to give oral evidence of the amount of the inventory claimed to have been made by him immediately after the bill of sale was executed. Defendant's counsel objected, on the ground that the inventory was the best evidence, but the objection was overruled. If the plaintiff had made or caused to be made an inventory, as he claimed, it alone was competent evidence of its contents or amount; and until the plaintiff showed some lawful reason for not producing it, he was entirely incompetent to testify as to its contents.

For the respondent there was a brief by *Carpenter & McGowan*, and oral argument by *Mr. Carpenter*.

TAYLOR, J. This action was commenced by *William Tuckwood* to recover a part of a stock of goods taken by the defendant as sheriff upon a writ of attachment issued in an action of Albert G. Atkins and others against Charles H. Tuckwood, and which the plaintiff claimed to own at the time said goods were taken. The complaint filed in the action was a complaint in replevin, but the plaintiff did not obtain an order for the seizure and delivery of the goods. On the trial the circuit judge compelled the plaintiff to elect whether he would proceed for the return of the goods to him, or for the value thereof. The plaintiff elected to proceed for the value of the goods so taken by the defendant. The action was tried by a jury, and a verdict was found in favor of the plaintiff for the value of the goods and interest thereon, amounting in all to the sum of

$1,435.20. Upon this verdict, judgment was entered in favor of the plaintiff and against the defendant, and from this judgment the defendant appeals to this court.

The evidence on the trial tended to prove the following state of facts, viz.: In January, 1884, the plaintiff and his brother, Charles H. Tuckwood, engaged in the boot and shoe business in Janesville as partners, and continued in such business until September, 1885. On the 28th of September, 1885, the plaintiff sold to his brother Charles H. all his interest in said business for the sum of $7,085, and thereafter, and until the 9th of March, 1886, the said Charles H. Tuckwood carried on said business in the same place in the city of Janesville. On the 9th of March, 1886, Charles H. Tuckwood had paid to the plaintiff no part of the said sum of $7,085 which he had agreed to pay him for his interest in said stock on September 28, 1885. On said 9th of March, 1886, the said Charles H. Tuckwood sold all of the said stock of goods then on hand, together with the accounts due him, to the plaintiff in payment and satisfaction of his debt against him for the said sum of $7,085, and the accrued interest thereon. Upon making such purchase the plaintiff caused notice of the same to be published in two newspapers published in said city, and changed the advertisement from Charles H. Tuckwood to *William Tuckwood*, and the key of the store was delivered to him. He employed his brother, another young man, and a shoemaker, to conduct the business for him. The three persons so employed by him were the same persons who conducted the business at and before the time he purchased the stock from his brother; and after the purchase and up to the time the sheriff attached the goods in controversy, the three persons above named were the only persons engaged in the store and shop selling the goods during the day. The plaintiff was, during all that time, during the day, engaged in other business, completing a job he had on hand at the time he made the alleged

purchase, but he spent the evenings at the store, took posses-
sion of the money received during the day, and locked the
store, except on one night, when he left the store before his
brother, and his brother locked the store that night, and
left the money in the store overnight. It was also proven
that at the time it is alleged *William* sold his interest in the
business to Charles H., in September, 1885, notice of such
sale was. published in one or more of the city papers. The
debt of the plaintiffs in the attachment suit accrued to them
against Charles H. Tuckwood after his alleged purchase of
*William's* interest, in September, 1885, and before the al-
leged sale to *William* on March 9, 1886.

There was no evidence in the case showing that the firm
of William & Charles H. Tuckwood were indebted to any
person other than to *William* at the time *William* sold his
interest in the business to Charles H., September 28, 1885;
nor·is there any claim made that the business was not car-
ried on openly in the name of Charles H. Tuckwood from
September 28, 1885, until the 9th day of March, 1886.
In fact, the debt of the plaintiffs in the attachment suit
was contracted by him as such sole owner of the business
between those dates. The plaintiffs in said action gave
credit to him as such sole owner. The evidence shows that
Charles H. was indebted to other persons at the time he
sold to *William* in March, 1886, in the sum of about $2,000,
but there is no direct evidence showing that *William* knew
of the amount of the indebtedness of Charles H. at the time
he made the alleged purchase. The evidence also shows
that the value of the stock at the time of the alleged pur-
chase in March, 1886, including the accounts due Charles
H., did not exceed the sum of $8,000.

The whole controversy on the trial in the circuit court
was as to the *bona fides* of the alleged sale from Charles H.
to *William* on the 9th of March, 1886. On the part of the
appellant it was claimed (1) that there was no such sum

due from Charles H. to *William* as *William* claimed when the bill of sale was made and delivered to him on March 9, 1886; (2) that if there was any such sum due to *William*, still the alleged sale was not made in good faith, but for the purpose of hindering and delaying the creditors of Charles H., and was therefore void as to such creditors; (3) that there was no actual delivery of the possession to *William* on such sale previous to the levy of the attachment made by the sheriff, and therefore the sale was void as to the plaintiffs in said action; and (4) that there was not sufficient evidence in the case to rebut the presumption of fraud arising out of the non-delivery of the actual possession of the property claimed to be sold by Charles H. to *William*. Upon a careful consideration of the evidence given in the case there can be no doubt but that there was sufficient testimony given on the trial to compel the trial court to submit all the controverted questions to the jury, and that the verdict upon these points is conclusive upon this appeal.

The only questions which can be considered upon this appeal are whether there were any errors in the rulings of the court as to the admission or rejection of evidence, or in the instructions given to the jury, or in refusing the instructions requested by the appellant.

The first error assigned by the appellant, that the judgment is against the evidence, is, as said above, clearly not well taken.

The second, that the damages are assessed at too large a sum, is not sustained by the evidence. The testimony of the plaintiff and his witnesses shows the value to have been as much or more than the jury have assessed them at.

The third error assigned, that the plaintiff was not entitled to an absolute judgment for the value of the goods taken, cannot be sustained. Although the complaint in the action is a complaint in replevin, and would have entitled

the plaintiff, upon making the affidavit required by sec. 2718, R. S., and giving the undertaking required by sec. 2720, R. S., to have the property delivered to him, the plaintiff did not make the necessary affidavit or give the undertaking, and so the property remained in the possession of the defendant at the time of the trial and verdict. The parties were in the same position they would have been had the plaintiff made the necessary affidavit and undertaking and obtained an order for the delivery of the property to him, and thereupon the defendant had given the undertaking required by sec. 2722, R. S., and so retained the possession of the property during the pendency of the action. In such case, if the plaintiff finally recovered in the action he would be entitled to judgment absolutely for the value of the property and damages for the detention. See sec. 2888, R. S. Possibly the same rule should apply to an action in which the complaint is in replevin for the recovery of the possession of personal property, or the value thereof if a return thereof cannot be had, and no proceedings are had to procure a delivery of the property by the plaintiff previous to the trial of the action; but, however that may be, in this case the record discloses that on the trial, and before the evidence in the case was closed, the court compelled the plaintiff to elect whether he would proceed for a return of the property or for the value thereof and damages, and the plaintiff elected to proceed for the value and damages. This, in effect, changed the action from one in replevin to one in trover. To this order of the court and election on the part of the plaintiff there was no objection or exception taken by the defendant, and it is too late now to except to such order.

The fourth error assigned is that the plaintiff was allowed to testify, in his own behalf, from what sources he obtained the money he claims to have put in the partnership business previous to September 28, 1885, when he sold

to his brother Charles H. This evidence was not given on his examination in the first instance, but was brought out on his re-examination, after he had been cross-examined by the defendant. We think the cross-examination was of such a character as to raise a suspicion, at least, that the plaintiff was not in the possession of or the owner of the large sum of money he claimed to have put in the business during the time mentioned. In that state of the case we think it was competent for him to state in his own behalf the sources from which he obtained the several sums he claimed to have put into the business. It seems to us that this evidence on the part of the plaintiff, in a case involving the good faith of his transactions with his brother, was competent, especially when the evidence elicited by the opposite party casts a doubt upon the question of his having the ability to advance the sums claimed to have been advanced by him. See *Phœnix Ins. Co. v. Badger*, 53 Wis. 283. In this case it could not have prejudiced the defendant's case. The evidence given was of a character which could have been easily controverted by the defendant had there been any doubt as to its truth.

The fifth error assigned, that it was improper to admit as evidence a conversation had between the plaintiff and his attorney, McGowan, when he called upon him to settle and secure his debt against his brother Charles H., is not well taken. No conversation was admitted except the fact that *William* authorized and directed him to secure his claim against his brother. This was clearly competent, as the evidence shows that Charles H. made the sale of the stock of goods to his brother *William* upon the request of McGowan, as the attorney of *William*.

It is also alleged as error that the court permitted McGowan to state what took place between him and Charles H. Tuckwood at the time he obtained the bill of sale from him. All he was allowed to state was that he

(McGowan) was informed by *William* of the amount he claimed as his due, and that he was directed to get pay or security for that sum. This, we think, was clearly competent. He was called upon by the plaintiff to prove the execution and delivery of the bill of sale which he procured of Charles H. for him at his request, and it seems to us that it was competent for the agent to state what he informed Charles was his authority from *William*, and the extent of the claim *William* made against him. There would be no other way of giving a reason for what he did on behalf of *William*. It was in fact a part of the transaction which resulted in giving of the bill of sale.

The objection to allowing the plaintiff to state the amount of the inventory claimed to have been made by him, without producing it, is clearly untenable. The inventory was nothing more than a memorandum made for the plaintiff's own convenience, and does not come within the rule suggested. In fact, the inventory so made by the plaintiff could not have been received in evidence, against the objection of the defendant, as testimony to prove the value of the stock of goods sold to the plaintiff, unless it had first been proved to be a correct inventory of all the goods conveyed to him.

The objection that it was error to exclude the tax rolls of the city of Janesville, offered to prove that the plaintiff was not in possession of the money he claims to have put into the business, was properly overruled. The tax rolls are not made by the plaintiff, nor with his assent or under his direction (see secs. 1055, 1056, R. S.), and they are only evidence against him in a proceeding to enforce the tax levied against him. For that reason the public convenience requires that they should be evidence, and the statute has so declared. See sec. 4162, R. S. The statements made to the assessor by the plaintiff, as to the amount of his personal property, were received in evidence, and properly, be-

cause they were his admissions, tending to prove a fact in issue.

The eighth error assigned relates to the instructions given to the jury and the instructions refused which were requested by the appellant. The learned circuit judge first gave several instructions asked by the counsel for the plaintiff, to each of which exceptions were taken by the defendant. These instructions were abstract questions of law as to the sufficiency of evidence and the burden of proof in establishing fraud, and it is not claimed that as abstract questions of law they are not properly stated; but it is insisted they are not applicable to the case at bar, because it is alleged by the learned counsel for the appellant that this case is taken out of the general rule. They claim the evidence shows that the plaintiff did not take the actual possession of the property purchased by him until after the levy of the attachment, and that consequently, by virtue of the statute (sec. 2310, R. S.), the burden of proof was on the plaintiff to show the good faith of the sale and that it was not in fact made to defraud creditors. Entertaining this view of the case, the learned counsel for the defendant asked the court to instruct the jury as follows: "I instruct you, as a matter of law, that under the undisputed evidence in this case there was no such immediate delivery of possession of the property in question by Charles Tuckwood to *William Tuckwood*, followed by actual and continued change of possession, as the law requires to constitute a valid sale against the creditors of Charles Tuckwood; that the sale is presumed to be fraudulent as to such creditors, and is conclusive evidence of fraud unless you find from the evidence that the same was made in good faith and without any intent to defraud such creditors; and to show this the burden of proof is upon the plaintiff."

This instruction was refused by the court and exceptions taken. If this instruction should have been given

to the jury, then we are of the opinion that many of the other exceptions to instructions given were well taken, as not being applicable to the facts of the case, and as tending to mislead the jury upon the real issues in the case; such as the instructions given as to the burden of proof upon the allegations of fraud in fact in the sale. If there was in fact no actual delivery of possession of the goods purchased until after the defendant attached the goods, then the rule as to the burden of proof of fraud in ordinary cases was changed from the defendant to the plaintiff, and it was the duty of the plaintiff to show by competent proof that the sale was made in good faith and without intent to defraud, in order to recover. In such a state of the case it would be error to distract the attention of the jury from the real issue in the case by instructing them upon the law not applicable to the facts before them.

Upon consideration of the whole evidence, we are of the opinion that the undisputed evidence in the case does not show, as a question of law, "that there was no such immediate delivery of the possession of the property in question by Charles to *William Tuckwood,* followed by an actual and continued change of possession, as the law requires to make a valid sale against the creditors of Charles, and therefore changed the burden of proof as to the *bona fides* of the sale to the plaintiff." Upon the evidence, that question, as well as the question of the real character of the transaction, was for the jury. If the jury believed the testimony of the plaintiff and his witnesses, they might have been justified in finding that there was an actual delivery of the possession of the goods in the store, and an actual and continued change of such possession. Although the evidence is not very clear as to what did take place on the day of the alleged sale and up to the time that the attachment was made, it tends strongly to prove that, immediately on the execution and delivery of the bill of sale, a formal delivery

of the goods and the store in which they were situated was made to the plaintiff; that he took the key of the store into his own possession; some money was delivered by Charles to him; that he afterwards continued to work during the day upon a job he had on hand and which he desired to finish, until the day the attachment was levied; that in the evenings he was in the store, locked the store at night, and took the money received during the day into his actual possession; that immediately, on the day of sale, he published the fact of his purchase in two of the city papers, and changed the local advertisement from the name of Charles to his own name; that Charles remained in the store as his clerk at a salary of eight dollars per week; and that the young man and the cobbler were also hired by him to remain at work as his employees, and that Charles thereafter had no control over or interest in the business, except as the hired clerk of the plaintiff.

If the jury believed the evidence of the plaintiff, we think they would have been justified in finding that there was an actual delivery of and a continued change of the possession, as required by the statute, in order to make a valid sale as against creditors, without further proof on the part of the plaintiff, and the burden of proving the sale fraudulent would be upon the defendant. The question as to whether there was such a change of possession was clearly a question of fact for the jury, and not of law for the court. See Bump on Fraud. Conv. (3d ed.), 136, 137; *Warner v. Carlton*, 22 Ill. 415; *Elkins v. Hamilton*, 20 Vt. 627; *Hall v. Parsons*, 17 Vt. 271; *Forsyth v. Matthews*, 14 Pa. St. 100; *McKibbin v. Martin*, 64 Pa. St. 352, 359, 360; *Hodgkins v. Hook*, 23 Cal. 581. If the evidence satisfied the jury that Charles was actually employed by *William* as a mere clerk to look after the business and sell the goods in his absence, having no further interest in the store than as a mere clerk working for wages, then his presence in the

store during the day-time, in the absence of the plaintiff, would not of itself be conclusive evidence that there was no actual change of possession as required by the statute, and the instruction asked was properly refused. See cases above cited.

The second, third, and sixth instructions requested by the defendant, and refused, were substantially given in the general charge. The eight instruction was properly refused, as not based upon all the facts bearing upon the question to which the attention of the jury was called by the instruction. The tenth instruction we think the learned judge might in his discretion refuse to give. It asks the court to make a summary of the evidence as understood by the counsel for the defendant, and say to the jury that all the matters stated in such summary, as well as all the other facts and circumstances, are to be considered by the jury in reaching a conclusion. A practice of that kind would be extremely dangerous, as any mistake in the statement of the evidence might be fatal to the instruction. The jury are as likely to know what the evidence is as the court, and it is rather the duty of the counsel to state to the jury what the evidence in the case tends to prove as they understand it, than of the court.

Having stated that, under the evidence, the question of whether there had been such a delivery of the goods to the plaintiff as took the case out of sec. 2310, R. S., was a question for the jury on all the evidence, it became proper that the learned circuit judge should instruct the jury as to the general rule as to the burden of proof in cases involving fraud, as well as the exception to the rule when the evidence brought the case within the provisions of sec. 2310; and this, it seems to us, was fairly done by the court in his general instructions.

If that part of the instructions of the learned circuit judge found in folios 145, 146, and 147 — to the last part of which

exception is taken by the appellant — is understood to be an instruction as to what evidence on the part of the plaintiff would be sufficient to overcome the presumption of fraud arising out of the fact that there was no actual delivery and continued change of possession of the property within the meaning of sec. 2310, R. S., if the jury should so find, still we think there is no objection to the instruction when read together. That part of it to which exception is taken, separated from the context, might not present facts sufficient to take the case out of the effect of the statute; but it is evident that the court did not instruct the jury that such facts would take the case out of the statute, but that all the facts stated in the entire paragraph would; and, so construed, there is no error in the instruction.

Upon the facts in the case the learned circuit judge seems to have instructed the jury fairly upon all the legal questions arising therein.

*By the Court.*— The judgment of the circuit court is affirmed.